UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SELIM ZHERKA,

                                    Plaintiff,

        -against-

MICHAEL F. BOGDANOS, individually,
MICHAEL R. EDELMAN a/k/a "THE                        08 Civ. 2062 (CLB)
CONSULTANT", individually, PHILLIP
AMICONE, individually and in his capacity
as Mayor of the City of Yonkers, New York,
DAVID "DOE" a/k/a "ETHAN EDWARDS",
individually, EDMUND ROE a/k/a "MOB
BUSTER", individually, JOHN POE,
individually, WILLIAM ROE, individually,
and JANET DOE, individually,

                                    Defendants
------------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT BOGDANOS' MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)

### Preliminary Statement

This memorandum of law is submitted in opposition to Defendant Bogdano's pre-

answer motion, made pursuant to FRCP 12(b), to dismiss Plaintiff's monetary claims against

him and, ostensibly pursuant to Younger abstention principles to dismiss Plaintiff's claim for

injunctive relief as to him. In the alternative movant requests that the Court stay "these claims

until the conclusion of the underlying state criminal proceedings" (Memorandum at 1).

Unfortunately, as discussed *infra* there is no underlying state criminal proceeding.

## Nature of the Case

### The Parties

Plaintiff Selim Zherka, an individual of Albanian national origin, is a citizen of the United States, a domiciliary of the State of New York, and a resident of the Northern Counties. In 2007 he actively supported the candidacy of Dennis Robertson an individual who ran against Defendant Amicone in the 2007 mayoral election campaign in the City of Yonkers, New York.

Plaintiff is the owner/publisher of a weekly periodical (The Westchester Guardian) which in 2007 was highly critical of Amicone's performance as Mayor of the City of Yonkers with respect to *inter alia*: corruption permeating his administration; no-show jobs for political cronies resulting in the theft of taxpayer's money in excess of $1,000,000; repeated First Amendment violations; failure to curb and/or attempt to curb systemic police brutality within the Police Department of the City of Yonkers; inability and/or unwillingness to reduce City spending and taxes; gross misuse of the City's police force to prohibit dissemination within the City of Yonkers of The Westchester Guardian; and gross misuse of the City's police force to target Plaintiff and other individuals, who non-disruptively distributed copies of The Westchester Guardian on public property, for criminal prosecution on a supposed Yonkers' Code violation (Section 100-35) which is facially and as applied patently unconstitutional (Complaint, para. 3).

Defendant Michael F. Bogdanos (hereinafter "Bogdanos")[1], who is sued in his individual and personal capacities only, is an Assistant District Attorney employed in the New York County, New York, District Attorney's Office. His conduct, as set forth *infra* was engaged in and continues to be engaged in with the knowledge and encouragement of the New York County District Attorney Robert Morgenthau (*id.* at 4).

Defendant Michael R. Edelman a/k/a "The consultant", who is sued in his individual and personal capacities only, during the Yonkers' mayoral election campaign in 2007 was Amicone's paid political consultant. "The Consultant" is Edelman's so-called "handle" as used by him on a blog ("Politics on the Hudson", hereinafter the "blog") operated and maintained by Gannett Suburban Newspapers (*id.* at 5).

Defendant Philip Amicone (hereinafter "Amicone", who is sued in his individual and official capacities, at all times relevant to this complaint was the duly elected Mayor of the City of Yonkers, New York (*id.* at 6).

Defendants David Doe a/k/a "Ethan Edwards", Edmund Roe a/k/a "Mob Buster", John Poe, William Roe, and Janet Doe each of whose actual identity is presently unknown to Plaintiff and each of whom is sued in his/her individual and personal capacities only, acting in concert with their co-defendants entered into the conspiracy referenced *infra* to violate Plaintiff's rights. The names "Ethan Edwards" and "Mob Buster" are handles used by those individuals on the blog (*id.* at 7).

---

[1] Bogdanos' first name is "Matthew", not Michael.

*The Facts*

On October 3, 2007, at 4:48 p.m. Edelman posted as "THE CONSULTANT" on the blog reference to "Albanian organized crime" and identified as if a matter of fact: ". . .Sam [Selim] Zherka is the kingpin who runs this group. Ask the feds, who have been protecting him for years in exchange for info on other organized crime families. Sam Zherka. . .run[s] it [a gentlemen's club] today along with various other clubs, diners, bakeries – anywhere they can launder their ill gotten strip club cash from the IRS. They're pretty feared, as muslim [*sic.* ]Albanians go" (*id.* at 5, should be "8").

On October 3, 2007, at 6:19 p.m. David Doe using his handle "ETHAN EDWARDS" responded to Edelman's blog entry of that date advising with respect to the "factual" data contained in it: "Consultant: All, or at least the great majority of that data is already confirmed" (*id.* at 6, should be "9").

On October 4, 2007, at 4:35 p.m. David Doe as "ETHAN EDWARDS" advised Edelman by a blog posting: "Frankly, in my opinion, a protected opinion, Zherka is laundering millions in dirty money" (*id.* at 7, should be "10").

On October 4, 2007, at 6:16 p.m. Edmund Roe as MOB BUSTER posted on the blog: "The Feds have been looking into Sam Zherka for quite some time. Here are some of the Zherka businesses that the Feds have a radar on. . .1. Prejoni Development Corp, 2. Nepolean Construction, 3. ABCZ Corp, 4. Metro Holding Corp, 5. Metro Holding & Mgmt, 6. Metro Holding & Mgmt LTD, 7. Metro Holding II LTD, 8. Metro S. Holding Corp., 9. New York Metro Holdings Corp., 10. Zherka Realty Inc., 11. Zherka, Dowling, Fiore, Butch, Lukaj & Oneill, Inc., 12. Sundry Management Inc., 13. West 20[th] Enterprises, 14. MKSZ Realty, Inc.,

15. Pacific Club Holdings, Inc., 16. Pacific Club Holdings II, Inc., 17. Sunday Management,

Inc. (partner with Domenica O'Neill), 18. JR Realty Management, Inc. (partner with Genaro

Morales), 19. Springfield Holdings. . .Sam Zherka does have many aliases. . .Sam Zenka, Sam

Zherka, Sam Zhreka. . .REALLY DANGEROUS AND BAD GUY!" (*id.* at 8, should be

"11").

On October 4, 2007, at 6:40 p.m. Edmund Roe as "MOB BUSTER"

posted an entry on the blog: "Most of the people listed as plaintiffs [in Sayegh v. Amicone,

07 Civ. 8048 (CLB), Lukaj v. Amicone, 07 Civ. 8184 (CLB), Kllapija v; Amicone, 07 Civ.

7597 (CLB), Guevara v. Amicone, 07 Civ. 6941 (CLB), Gonzalez v. Amicone, 07 civ. 7600

(CLB), Dzikovic v. Amicone, 07 Civ. 7692 (CLB), and Ayala v. City of Yonkers, 07 Civ.

8186 (CLB)] are not aware that their names were included in a lawsuit against the City of

Yonkers. Also, many on this list do not even read or write English [*sic.*]. Some are Nader

Sayegh's tenants who are defrauding section 8 with the help of Nader Sayegh. . .If the City of

Yonkers would like a more detailed information on each litigant, the research has been

completed, and is readily available upon asking. I will make certain that my tax dollars does

[*sic.*] not go to help the MOB. These are only a few names of the litigants. . .1. Madelin

Suleiman, 2. Lana Marji, 3. Kenneth Heslop, 4. Randa Sayegh, 5. Chandra Sookdeo, 6. Joni

Campbell, 7. Yolanda Collazo, 8. Roberto Rodriguez, 9. Guillermo Corso, 10. Chesekia

Corso, 11. Mario Martinez, 12. Angel Feliz, Sr., 13. Angel Feliz Jr., 14. Maribel Ayala, 15.

Domenica O'Neill, 15. Richard Guzman, 16. Cesar Castillo" (*id.* at 9, should be "12").

On October 4, 2007, at 8:49 p.m. Edmund Roe as "MOB BUSTER", posted an entry

on the blog: "I discovered footage of Zherka and the motley crew standing before the Federal

5

[Courthouse] steps calling the Independence Party corrupt. . .I will not allow these evil people (MOBSTERS) to prevail" (*id.* at 10, should be "13").

On October 5, 2007, at 5:25 p.m. Edelman as "THE CONSULTANT" published on the blog: "The only thing that remains to be determined in the breadth of the zherka influence in the Robertson campaign. . . .sifting through the numerous corporations contributing there are a number that have one incorporator in common. .sam zherka. I believe that of the [$]63,000 that is raised [for the Robertson campaign] over 50% comes from a zherka owned entity" (*id.* at 11, should be "14").

On October 5, 2007, at 7:04 p.m. David Doe as "ETHAN EDWARDS" posted on the blog: "Yes, all those figures in Robertson's [campaign donor] filing must be gone over carefully. I saw the large amount I did with just a quick look because I know many of Zherka's corporations. . .I suggest the US Attorney should be notified of all this, as well as the Westchester [County] DA, the Yonkers PD, and the State Elections Board. There is still a complaint to be filed. . .Maybe the new Yonkers Republican execs can file it jointly. . .Does anyone still want to say the Guardian can claim it's a legitimate newspaper? Under the Guardian's own name, Zherka gave $5,000 to Robertson" (*id.* at 12, should be "15").

On October 5, 2007, at 7:05 p.m. David Doe as "ETHAN EDWARDS" posted on the blog: "How about because none of Amicone's donors are tied to the Albanian mob?" (*id.* at 13, should be "16").

On October 5, 2007, at 8:00 p.m. Edmond Roe as "MOB BUSTER", made an entry on the blog with respect to Plaintiff, who he identified as "Sammy Zherka":

"I am conducting this investigation not because anyone has

asked me to, but because I love Yonkers, and it is despicable

to see someone who in my opinion is money laundering,

and using the City of Yonkers to try and further his criminal activity"

(*id.* at 14, should be "17").

On October 6, 2007, at 8:38 p.m. Edmund Roe as "MOB BUSTER" posted to the blog: "Mr. Ethan Edwards, I discovered a lot about Morales, and just to give a bit of information to those who may be somewhat curious, there is quite a bit of mortgage fraud with this character and his partner Zherka" (*id.* at 15, should be "18").

On October 8, 2007, at 2:56 p.m. Edmund Roe as "MOB BUSTER" posted to the blog: "Mr. Ethan Edwards, the JN [Journal News] never reports correctly. Zherka. . . runs a sleazy escort service" (*id.* at 16, should be "19").

On October 8, 2007, at 4:19 p.m. David Doe as "ETHAN EDWARDS" posted to the blog: "Mob Buster. . .Do you have anything on Nubreed Entertainment, which is another Zherka corp. that gave money to Robertson. . .Actually, I wonder if the escort service is in Houston, NY, or somewhere else. By the way, since your information is law-enforcement related, I suggest you send it to: Edmund Hartnett, Yonkers Police Commissioner. . ." (*id.* at 17, should be "20").

On October 8, 2007, at 10:14 p.m. Edmund Roe as "MOB BUSTER" posted to the blog: "Mr. Ethan Edwards, thanks for the contact information. These people are dangerous, and it['s] real serious territory, the authorities MUST be contacted. For you[r] inquiry about Nubreed. . .This is definitely linked to the Albanian Mob" (*id.* at 18, should be "21").

On October 10, 2007 at 1:55 p.m. David Doe using his handle "ETHAN EDWARDS" made a blog entry: "[D]emanding that Robertson explain his ties to Zherka . . .Regardless, the Republicans should get their list of Zherka contributions to Robertson complete. . .But this list here, to this point, is accurate – 1. ABCZ Corp. $5,000, 2. Casanova Ent. $500, 3. Kukaj Mgt. $500, 4. Metro Holdings $5,000, 5. MKSZ Realty $5,000, 6. Moe Management $500, 7. Gennaro Morales, $1,600, 8. Nubreed Ent. $500, 9. Pacific Holdings $1,250, 10. Sunday Mgt. $500, 11. The Guardian News $5,000" (*id.* at 19, should be "22").

On October 16, 2007, at 8:20 p.m. David Doe as "ETHAN EDWARDS" posted to the blog: "Dennis Robertson, who has been purchased by Sam Zherka, who is linked to the Albanian mob, is telling everyone how to fight crime" (*id.* at 20, should be "23").

On October 17, 2007, at 8:24 p.m. David Doe as "ETHAN EDWARDS" posted to the blog: "In the other world, Robertson's master, the Albanian mob-linked Selim (Sam) Zherka, has sent out a. . .horrific race-baiting mailer full of lies about Amicone and the Yonkers Police Dept." (*id.* at 21, should be "24").

On October 17, 2007, at 8:33 p.m. David Doe as "ETHAN EDWARDS" posted on the blog: "Consultant. YOU were the first to say a crime was committed regarding Zherka and Robertson's money" (*id.* at 22, should be "25").

On the evening of October 17, 2007, during a 3rd Ward Republican meeting held at Asbury Church in the City of Yonkers Amicone was introduced in the dual capacity of Mayor and candidate for re-election following which in those two capacities he addressed a gathering of approximately sixty Yonkers' residents (*id.* at 23, should be "26").

In that connection Amicone specifically identified Plaintiff by name, specifically referenced his position as owner/publisher of The Westchester Guardian following which Amicone told all of the persons present that as matters of fact:

      a. Plaintiff is a "convicted drug dealer",

      b. Plaintiff is an "Albanian mobster" and a "thug",

      c. Plaintiff will, in the event Amicone is not re-elected as Mayor, open "drug dens" throughout the City of Yonkers,

      d. Plaintiff will, in the event Amicone is not re-elected as Mayor, open "strip clubs" throughout the City of Yonkers, and *inter alia,*

      e. Plaintiff will, in the event Amicone is not re-elected as Mayor, "loot" Yonkers residents' "pension funds" and "loot" the City of Yonkers

(*id.* at 24, should be "27").

Each one of the statements of supposed fact referenced in the preceding paragraphs was: i) absolutely, completely and in every respect materially false; ii) knowingly and intentionally uttered by those Defendants in calculated and/or reckless disregard of the truth; iii) published by them without benefit of any privilege/authorization; iv) intended by them to impute to Plaintiff serious criminal wrong-doing, a criminal history, criminal activity as a member of an Albanian "mob", felonious possession and sale of illicit drugs, unfitness to engage in his professional activities as publisher/owner of the Westchester Guardian, and dishonesty; v) intended by those Defendants to expose Plaintiff to public contempt, ridicule, aversion, disgrace and/or to induce an evil opinion of him in the minds of right-thinking persons and to deprive Plaintiff of their friendly intercourse in society; vi) intended by those Defendants to

retaliate against Plaintiff for his having advocated Robertson's election as Mayor and Amicone's defeat as Mayor in 2007; vii) intended by those Defendants to retaliate against Plaintiff for his having published editions of <u>The Westchester Guardian</u> challenging the Amicone administration as corrupt; and vii. intended by those Defendants to deter, intimidate and/or threaten Plaintiff with respect to his testifying and/or party plaintiff status in <u>The Guardian News v. Amicone</u>, 07 Civ. 7078 (CLB) and the other referenced law suits (*id.* at 25, should be "28").

On or subsequent to October 17, 2007, Edelman, Amicone, David Doe, Edmund Roe, John Poe and William Roe provided and/or caused to be provided to Bogdanos the complaint (referenced by "ETHAN EDWARDS" *supra*) embodying all of the false information that they had published on the blog and/or at Asbury Church with the objective of having Bogdanos take additional retaliatory action against Plaintiff.

In that connection they sought to arrange for Bogdanos to investigate that information with a view towards: retaliating against Plaintiff for his First Amendment protected activities; intimidating, deterring, and threatening Plaintiff in connection with a federal injunctive trial conducted late in 2007 before the Hon. Charles L. Brieant in <u>The Guardian News v. Amicone</u>, 07 Civ. 7078 (CLB) and the forthcoming trials in the other civil rights actions referenced *supra*; injuring him in his person and property by communicating with members of the business community to the effect that Plaintiff is a drug dealer, that he runs an escort service, that he is an Albanian mobster, that he is engaged in money laundering, that he is involved in prostitution, and otherwise engaged in the commission of felonies (*id.* at 26, should be "29").

Knowing that the allegations against Plaintiff were totally false, Bogdanos agreed (as an accommodation to the Defendants who have strong political ties to the Administration of the

City of New York) to engage in investigative activities with the objectives of: destroying Plaintiff's reputation; destroying his businesses; chilling him in the exercise of his First Amendment rights; punishing him for his exercise of his First Amendment rights as accomplished through The Westchester Guardian; deterring, intimidating, and/or threatening him with respect to his prospective testimony as a party plaintiff in Federal Court in the law suits referenced *supra*; injuring Plaintiff in his person or property on account of his having filed multiple First Amendment civil rights actions against Amicone and *inter alia* the City of Yonkers;  and injuring Plaintiff in his person or property on account of his having testified in one such action; and otherwise crippling him (*id.* at 27, should be "30").

In connection with that investigation Bogdanos with the agreement and encouragement of his co-defendants and without benefit of any evidence whatsoever involving the commission by Plaintiff of any crime and/or crimes within and/or without the jurisdiction of the New York County District Attorney has: i) advised at least one attorney, who in the past has had an attorney/client relationship with Plaintiff, that he (Bogdanos) is investigating Plaintiff by reason of his Albanian mob connection, tax fraud, money laundering, illicit drug dealings, and operation of a prostitution ring; ii) encouraged and/or permitted at least one investigator in the New York County District Attorney's Office to advise a supposed witness that Plaintiff is the biggest drug dealer in New York; iii) issued dozens of "grand jury" subpoenas (with documents produced pursuant to same in Bogdanos' office rather than before any grand jury) to every corporation and/or person identified by Bogdanos' co-defendants as having made financial contributions to the Robertson election campaign - - deliberately impairing Plaintiff's credit,

business operations, and business relationships; iv) published and/or re-published the false allegations his co-defendants posted on the blog; and *inter alia;* v) otherwise assisted his co-defendants in violating Plaintiff's First Amendment rights (*id.* at 28, should be "31").

As a proximate result of Defendants' conduct Plaintiff has been caused to suffer: multiple violation of his rights as protected by the First Amendment to the United States Constitution; multiple violations of his rights as protected by 42 U.S.C. §1985(2); a chilling of his prospective exercise of his First Amendment protected rights; *per se* slander; irreparable injury to his professional reputation; emotional upset; anxiety; public humiliation; public shame; public embarrassment; and he has otherwise been rendered sick and sore (*id.* at 29, should be "32").

### Plaintiff's Claims

As against all Defendants other than Amicone, Plaintiff asserts a claimed violation of his rights as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. 1983 (First Claim).

As against all Defendants, Plaintiff asserts a claimed violation of his rights as guaranteed by 42 U.S.C. 1985(2)(Second Claim).

As against Edelman, Plaintiff asserts a supplemental New York State claim for *per se* defamation (Third Claim).

As his Sixth Claim Plaintiff alleges with respect to Bogdanos:

> "40. Since Bogdanos' "investigation" is utterly without a law
>
> enforcement and/or prosecutorial purpose, does not relate to

the commission (either within or without the jurisdiction of

the New York County District Attorney) of any crime(s), is

calculated to violate Plaintiffs rights as guaranteed by the First

Amendment to the United States Constitution and 42 U.S.C.

§1985(2), he should be permanently enjoined from continuing to engage in that

Conduct".[2]

### Bogdanos' Motion, Premised Upon Calculatedly False Representations of "Fact", is Disingenuous

Presumably appreciating that his motion is meritless, Bogdanos ignores the complaint and

fabricates what he evidently regards as a "factual" predicate for making the instant motion. Fantasy

aside, he like every other litigant on a 12(b)(6) motion is bound by the factual assertions contained in

the complaint and is precluding from relying on supposed "facts" set forth in a memorandum of law

without any evidentiary basis. In short, he is not permitted to place reliance upon facts that simply do

not have any record support. Consideration of his misrepresentations, *seriatim*, follows.

Movant falsely claims "in a nutshell" that: i) Plaintiff has accused him of "wrongfully utilizing

an [*sic.*] New York County grand jury to investigate [him] for suspected criminal activities

(Memorandum at 1-2); ii) Plaintiff seeks to enjoin movant from "continuing that grand jury

investigation" (*id.* at 2); iii) Plaintiff is attempting to "interfere with an ongoing state criminal

proceeding" (*ibid.*); iv) that there is an "ongoing state criminal proceeding" (*ibid.*); v) that Plaintiff is

seeking to enjoin an ongoing criminal investigation that is being conducted by a New York County

grand jury" (*id.* at 5); vi) "there can be no doubt that the grand jury investigation is being conducted to

---

[2] The remaining claims are interposed against the presently unidentified individually named Defendants, but are irrelevant to the instant motion.

13

determine whether, in fact, a crime has been committed by some person or persons" (*id.* at 7); vii) "an individual suffers no constitutional violation by a grand jury investigation (*id.* at 8); viii) "plaintiff alleges that the grand jury investigation is targeting him" (*id.* at 10); ix) "[o]f course. . . this grand jury proceeding is secret" (*id.* at 11); x) "it would be unseemly for a federal court to require a state prosecutor to defend his actions in pursuing a grand jury investigation while that investigation is active"; xi) "plaintiff accuses ADA Bogdanos of conducting a grand jury investigation" (*id.* at 15); xii) "Plaintiff claims against ADA Bogdanos focus exclusively on his conduct in conducting a grand jury investigation" (*id.* at 16); xiii) "plaintiff alleges that he is the actual target of the grand jury investigation" (*id.* at 17); xiv) "Bogdanos. . .has focused the grand jury's investigation on particular crimes allegedly committed by plaintiff" (*ibid.*); xv) "[b]asically, plaintiff alleges that ADA Bogdanos conspired with the other defendants to subject him to a baseless grand jury investigation" (*ibid.*); xvi) "Plaintiff, though, makes no claim that the grand jury was not sitting when those subpoenas were issued or, more importantly, on the date the subpoenas were returnable" (*ibid.* at ftn. 10); xvii) "the idea that ADA Bogdanos conspired with the other defendants to open an unwarranted grand jury investigation simply does not pass this plausibly [*sic.*] threshold"; and x viii) "it is simply absurd to think that ADA Bogdanos would enter into any such agreement, especially with individuals who he is not even alleged to have known before the grand jury proceeding was commenced".

Unfortunately for Bogdanos, the complaint does not allege any one of these supposed "facts".

Nowhere in the complaint does Plaintiff assert that there is and/or ever was any grand jury convened to investigate him. On the contrary, the complaint simply alleges in pertinent respect that Bodgdanos "issued dozens of 'grand jury' subpoenas (with documents produced pursuant to same in

Bogdanos' office rather than before any grand jury) [Complaint, para. 24(iii)]. In sum, the reference to "grand jury" (in quotation marks) subpoenas, and the circumstance that they were returnable to movant's office rather than before any grand jury can only be reasonably interpreted to mean that Bogdanos was using those subpoenas without any grand jury having issued same and/or any grand jury conducting any investigation with regard to Plaintiff.

Bogdanos, according to the complaint, issued the subpoenas as if they were grand jury proceedings and personally received responsive documents in his office.

In total disregard of the complaint and the presently incontrovertible facts alleged in it, Bogdanos proclaims - - presumably to enhance his factually groundless assertion that there is actually a grand jury empanelled with regard to Plaintiff - - that he "cannot discuss the substance or the target(s) of that [grand jury] proceeding" because "this grand jury proceeding is secret" (Memorandum at 11).

This assertion, bottomed on pure hypocrisy, proves a little too much given the allegation in the complaint that Bogdanos:

> "i) advised at least one attorney, who in the past has had an attorney/client
>
> relationship with Plaintiff, that he (Bogdanos) is investigating Plaintiff by
>
> reason of his Albanian mob connection, tax fraud, money laundering, illicit
>
> drug dealings, and operation of a prostitution ring; [and] encouraged and/or
>
> permitted at least one investigator in the New York County District Attorney's
>
> Office to advise a supposed witness that Plaintiff is the biggest drug dealer
>
> in New York"

(Complaint, para. 28).[3]

---

[3] The hypocrisy is very real given movant's attempt to turn paragraph "28" of the complaint on its head by falsely reciting: "According to plaintiff, ADA Bogdanos is currently investigating him, 'by reason of his Albanian mob

Indeed, taking Bogdanos at his superficial word - - to the effect that he "cannot discuss either the substance or the target(s) of" an actual, secret grand jury proceeding - - his public disclosures of both to that attorney and his investigator's disclosure at movant's behest to a "witness" compel the conclusion that no such grand jury proceeding exists or ever existed with respect to Plaintiff.[4] For surely ADA Bogdanos would not breach the veil of secrecy that surrounds real grand jury investigations.

Put differently, but as actually alleged in the complaint, Bogdanos agreed to engage in investigative activities in subjective bad faith and without the comfort of an ongoing grand jury proceeding behind which he could hide while pretending to act as "a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State" (Memorandum at 15).

### Bogdanos' Self-serving Proclamations Regarding the Conspiracy Alleged in the Complaint Should be Disregarded

In conjunction with Bodanos' wholesale resort to false assertions of fact, he attempts to wax eloquent regarding Plaintiff's allegations of conspiracy. Thus according to movant since "there is no readily apparent motive for this conspiracy, it is just absurd to think that ADA Bogdanos would ever

---

connection', on charges of 'tax fraud, money laundering, illicit drug dealing and operating a prostitution ring'". In actuality that paragraph alleges that Bogdanos, who now strategically claims he is bound by grand jury secrecy, personally reported to an attorney that he was investigating these supposed crimes. Of course if there actually were a grand jury investigating Plaintiff, Bogdanos could not lawfully have published this scurrilous information.
[4] Given movant's totally disingenuous argument, his credibility is hardly enhanced by his duplicative incantations regarding Rule 11 [Memorandum at 4, (ftn. 2), 11, 15]. He protests a tad too much. Additionally his snide comment ["For some reason, though plaintiff is convinced that he is a target of that grand jury" (*id.* at 4)] demonstrates either his ignorance of the law governing a 12(b)(6) motion, a disregard of the presently incontrovertible facts, or both. The "some reason" is clearly articulated in the complaint. Bogdanos has publicly announced that Plaintiff is a target, not of a grand jury investigation but of a Bogdano' investigation, and in that connection has publicly declared Plaintiff guilty of a series of felonies for which absolutely no proof exists (Complaint, para. 28).

enter into any such agreement" (Memorandum at 18). And along with his characterization of the conspiracy theory as "absurd", he further asserts: "tellingly absent from the complaint is any allegation that ADA Bogdanos ever met with any of the other defendants, and plaintiff makes no effort to explain how ADA Bogdanos and these individuals formulated their alleged conspiracy against plaintiff (*ibid.*).

Should the Court find persuasive Bogdanos' attack on this aspect of the face of the complaint, the remedy clearly is not dismissal. Rather consistent with the Second Circuit's established case law, an amended complaint should be permitted. Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991).

This conclusion is reinforced by Morales v. Edelman, 08 Civ. 5756 and O'Neill v. Edelman, 08 Civ. 5757, both of which were last week filed as cases related to the one at bar (copies annexed to Lovett affirmation).

For in both of those actions the Plaintiffs assert, with respect to the exact same nucleus of facts upon which the instant complaint is grounded:

"30. On or subsequent to October 17, 2007, Edelman, Amicone, Hartnett, Fleming and Porcari acting in concert provided and/or caused to be provided to the Westchester County District Attorney, Janet DiFiore (hereinafter "DiFiore"), the complaint. . . embodying all of the false information that they had published on the blog and/or at Asbury Church with the objective of having DiFiore arrange for a First Amendment retaliatory criminal investigation of Zherka and all of the other Robertson campaign contributors identified on the blog - - including Plaintiff. Defendants' objective in doing so was to chill Plaintiff, Zherka, and

those other contributors' in the future exercise of their First Amendment protected rights and to cause them injury and damages in connection with their private business and/or social activities.

31. DiFiore agreed to assist Defendants and, in order to deflect from herself and/or her Office (because she in her capacity as District Attorney has personally threatened Zherka regarding a news article published in The Westchester Guardian regarding her husband's attempt to bribe a candidate who was running against DiFiore for elective office and because she informed a now-former political confident of hers that she was going to "get" Zherka), she contacted a New York County Assistant District Attorney, Matthew Bogdanos, through her (DiFiore's) husband, Dennis Glazer, Esq. who: is a personal friend of Bogdanos; whose law firm has hosted legal seminars and/or programs with and/or on behalf of Bogdanos; and whose law firm has over the years hired former Assistant District Attorneys from New York County upon their retirement and/or resignation from the Manhattan District Attorney's Office. In that connection Bogdanos is nearing retirement as an Assistant District Attorney.

32. Bogdanos, as a self-serving political and personal accommodation to DiFiore's husband and DiFiore, agreed on the basis of subjective bad faith to investigate Zherka and the other Robertson campaign contributors despite the complete lack of any evidence of criminal wrong-doing; the complete lack of jurisdiction by the New York County District Attorney's Office over any supposed "crimes" as fabricated by Defendants, and solely because those persons

18

exercised their First Amendment protected right to advocate against Amicone and in favor of Robertson as a candidate for Mayor in Yonkers in 2007.

33. Knowing that the allegations against Plaintiff, Zherka and the other Robertson campaign contributors were totally false, Bogdanos agreed to engage in investigative activities with the Defendants' objectives of: destroying Plaintiff and Zherka's reputations; destroying and/or damaging Plaintiff's businesses; chilling him in the exercise of his First Amendment rights; punishing him for his exercise of his First Amendment rights in supporting Robertson in his election campaign against Amicone; deterring, intimidating, and/or threatening Plaintiff and; injuring Plaintiff and Zherka in his person or property on account of his having engaged in First Amendment protected conduct.

34. In connection with that investigation Bogdanos for the benefit of Defendants and without evidence whatsoever involving the commission by Plaintiff and/or Zherka of any crime and/or crimes within and/or without his jurisdiction has: i) advised at least one attorney, who in the past has had an attorney/client relationship with Plaintiff, that he (Bogdanos) is investigating Zherka by reason of his Albanian mob connection, tax fraud, money laundering, illicit drug dealings, and operation of a prostitution ring; ii) encouraged and/or permitted at least one investigator in the New York County District Attorney's Office to advise a supposed witness that Zherka is the biggest drug dealer in New York; iii) issued dozens of "grand jury" subpoenas (with documents produced pursuant to same in Bogdanos' office rather than having the subpoenas returnable

19

before any sitting grand jury) to every corporation and/or person identified by

Defendants (including Plaintiff's corporation) as having made financial

contributions to the Robertson election campaign - - deliberately impairing

Plaintiff's reputation, business operations, and business relationships; iv)

published and/or re-published the false allegations that Defendants had posted on

the blog; and *inter alia;* v) otherwise assisted Defendants in violating Plaintiff's

rights and those of Zherka."

In sum, Bogdanos' connection with the Defendants is clear. The meeting of the minds is

self-evident. Bogdano's motivation - - grounded in subjective bad faith, driven by politics and

his pecuniary interest in post-prosecutorial employment in the law firm of DiFiore's husband

rather than his oath of office - - is unlawful and actionable for both injunctive and monetary

relief as discussed *infra*.


## POINT I

## <u>YOUNGER</u> ABSTENTION
## IS IRRELEVANT TO THIS
## ACTION

On the facts as plead, rather than those fabricated by Bogdanos for purposes of his

memorandum of law, it is self-evident that <u>Younger</u> abstention has nothing to do with this case.

Forthe Second Circuit has:

". . .found that a refusal to abstain would be justified where a

'proceeding has been brought to retaliate for or to deter

Constitutionally protected conduct, or where a prosecution or

proceeding is otherwise brought in bad faith or for the purpose

to harass'".

Diamond "D" Construction Corp. v. McGowan, 282 F.3d 191, 199 (2d Cir. 2002); Kern v.

Clark, 331 F.3d 9, 12 (2d Cir. 2003).


## POINT II

### THE CLAIM FOR DAMAGES
### AGAINST BOGDANOS IS
### LEGALLY SUFFICIENT

All of Bogdanos' dissembling aside, the presently indisputable facts as actually

established on this record show that: i) Bogdanos' purported "investigation" of Plaintiff is

motivated by subjective bad faith; ii) he has issued supposed "grand jury" subpoenas in order to

compel production of documents to his office, rather than any sitting grand jury; iii) he is

motivated by selfish and personal, rather than legitimate law enforcement, objectives; iv) he is

doing so while fully aware that the litany of allegations made by his co-defendants are utterly

false; and v) there is no factual predicate for any allegation of criminal wrong-doing, much less

any such wrong-doing subject to the jurisdiction of the New York County District Attorney's

Office.

In short, as even Bogdanos is constrained to concede, "prosecutorial [absolute] immunity

does not apply to purely investigative conduct" (Memorandum at 16) such as that which is at

issue in the case at bar. Rather Bogdanos' is at best entitled to raise a defense premised upon

qualified immunity. Zahrey v. Coffey, 221 F.3d 342, 346 (2d Cir. 2000).

In this case, of course, any such defense would be frivolous since the First Amendmen

rights of the Plaintiff were not only well-established long before Bogdanos trampled upon them, but no reasonable prosecutor would have believed that First Amendment retaliation is lawful.

Zahrey supra at 347; Ying Jing Gan v. City of New York, 996 F.2d 522, 528, 531-2 (2d Cir. 1993);

### Conclusion

The motion should in all respects be denied.

Dated: White Plains, N.Y.
      June 29, 2008

                    LOVETT & GOULD, LLP
                    Attorneys for Plaintiff
                    By:
                    Jonathan Lovett (4854)
                    222 Bloomingdale Road
                    White Plains, N.Y. 10605